**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: ) | |
| ) | |
| KENNETH R. BARRICK ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | Case No. 12 B 02646 |
| ) | |
| BCL – Capital Funding LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KENNETH R. BARRICK, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**ADVERSARY COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF DEBT OWED TO BCL CAPITAL FUNDING, LLC**

Plaintiff, BCL – Capital Funding LLC, ("Plaintiff" or "BCL") by and through its attorneys, Levenfeld Pearlstein, LLC, files this Adversary Complaint Objecting to the Dischargeability of Debt Owed to BCL Pursuant to 11 U.S.C. §§ 523(a)(2)(B) and 523(a)(4). In support of its Adversary Complaint, BCL states as follows:

**JURISDICTION AND VENUE**

1. This adversary proceeding is a civil proceeding arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code within the meaning of 28 U.S.C. § 1334(b).

2. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and internal operating procedure 15(a) of the Federal District Court of Illinois.

3. This is a core proceeding under 28 U.S.C. § 157.

4. Venue of this adversary proceeding is proper in this Court under 28 U.S.C. § 1409 (a) and Rule 312 f the Bankruptcy Rules for the U.S. District Court and the U.S. Bankruptcy Court for the northern district of Illinois.

## THE PARTIES

5. Plaintiff BCL is an Illinois limited liability corporation that conducts business in Cook County, Illinois. Plaintiff's principal place of business is located in Northbrook, Illinois

6. Defendant, Kenneth Barrick ("Barrick") maintains a residence in Glen Ellyn, Illinois and is a resident of the State of Illinois.

## ALLEGATIONS COMMON TO ALL COUNTS

7. Barrick is the majority owner of Avanti Medical Group, LLC ("Avanti"), and was in charge of Avanti's day-to-day business operations.

8. Avanti was formerly in the business of operating medical care clinics in Supervalu stores located in Illinois and Minnesota.

9. During the summer of 2011, Barrick approached BCL seeking short-term financing during a time when Avanti was short on liquidity in its working capital to meet payroll and other expenses.

10. In addition to the request for the loan, Barrick discussed entering into a joint venture arrangement with BCL, under which BCL would make a larger investment into Avanti in exchange for some equity therein.

11. On June 29, 2011, Avanti and BCL entered into a Term Sheet ("Term Sheet") for BCL's Equity Investment in Avanti. (A copy of the Term Sheet is attached hereto as <u>Exhibit A</u>.)

12. Barrick executed the Term Sheet on behalf of Avanti.

13. Although the majority of the terms of the Term Sheet were non-binding, there was a binding provision entitled "Binding Exclusivity and Break-Up Fee." Pursuant to this binding provision, BCL was entitled to a $150,000 break-up fee in the event that Avanti and BCL, for any reason, did not enter into the proposed "Partnership and Investment Agreement" contemplated by the Term Sheet.

14. Pursuant to the Term Sheet, BCL paid $70,000 to Avanti.

15. The Term Sheet, expressly including the Binding Exclusivity and Break-Up Fee, was guaranteed by Barrick (the "Term Sheet Guaranty"). (A copy of the Term Sheet Guaranty, dated June 29, 2011, is attached hereto as <u>Exhibit B</u>.)

16. Shortly after executing the Term Sheet, Barrick came back to BCL, requesting more money for Avanti, again to cover payroll and other expenses.

17. On July 27, 2011, Avanti and BCL executed a Loan and Security Agreement ("Loan Agreement"). (A copy of the Loan Agreement is attached hereto as <u>Exhibit C</u>.)

18. Barrick executed the Loan Agreement on behalf of Avanti.

19. The Loan Agreement was guaranteed by Barrick (the "Loan Agreement Guarantee" and, collectively with the Term Sheet Guaranty, the "Guarantees"). (A copy of the Loan Agreement Guarantee is attached hereto as <u>Exhibit D</u>.)

20. Pursuant to the Loan Agreement, BCL agreed to loan another $80,000 to Avanti, in addition to the $70,000 provided the prior month (collectively, these amounts constitute the "Loan").

21. The terms of the Loan, and the repayment thereof, were further defined in a Draw Note, dated July 27, 2011 (the "Draw Note", collectively with the Loan Agreement, the Term Sheet and the Guarantees, the "Loan Document"). (A copy of the Draw Note is attached hereto as Exhibit E.)

22. Under the terms of the Loan Agreement, Avanti provided BCL with a security interest in collateral, including Avanti's account receivable (the "A/R").

23. In order to induce BCL to enter into the Loan Documents, Barrick provided BCL with information regarding the financial condition of both Avanti and himself, and information regarding value of the collateral securing Avanti's obligations to BCL.

24. Specifically, Barrick provided BCL with certain financial reports for Avanti (the "Financial Reports"), representing that Avanti possessed approximately $305,000 in valid A/R. (A copy of the Financial Reports is attached hereto as Exhibit F.)

25. The Financial Reports provided to BCL also represented that approximately $168,000 of the $305,000 in A/R would be collectable. (*See id.*)

26. BCL reasonably and justifiably relied on the representations and Financial Reports provided by Barrick regarding Avanti's financial condition, in general, and collectable A/R, in particular, in deciding to proceed with entering into the Loan Documents with and making the Loan to Avanti and Barrick.

27. Avanti's A/R arises upon issuance of invoices for medical services provided at the clinics, which are then submitted to the patient's insurance company for payment.

28. Upon information and belief, in order for the insurance companies to pay Avanti's medical invoices (in order for Avanti's A/R to be collectable), the nurse practitioners providing the services must have certain qualifications and certifications approved by the various insurance companies (the "Provider Certifications").

29. Barrick knew about the need for such Provider Certifications prior to entering into the Loan Documents with BCL.

30. Barrick further knew that these Provider Certifications were required in order for Avanti's A/R to be collectable.

31. Barrick further knew, at the time that he entered into the Loan Documents with BCL, that the majority of Avanti's nurse practitioners did not possess the requisite Providers Certifications.

32. Barrick knew that the majority of Avanti's A/R was uncollectable at the time of execution of the Loan Documents.

33. Barrick knew that the Financial Reports provided to BCL, in order to induce BCL to make the Loan to Avanti, contained misrepresentations regarding the collectability of the A/R and the financial condition of Avanti.

34. At the time the Loan Agreement was executed, Avanti was regularly using a collection agency as an outsourced collection department to collect all of its A/R from the insurance companies.

35. The Loan Agreement provided that the collection agency was to be notified that it was required to send 75% of all A/R collected to BCL. (*See* Loan Agreement at Section 03.03.)

36. The Draw Note further provided that on the first of each month, starting August 1, 2011, BCL was supposed to receive a payment from Avanti for the greater of (i) 75% of all A/R collected during the month; or (ii) 1% of the outstanding principal balance of the Loan.

37. Avanti immediately breached the Loan Agreement by failing to provide BCL with the first requisite monthly payment on August 1, 2011.

38. Avanti further breached the Loan Agreement by failing to provide BCL with any payments of or from collected A/R.

39. Upon information and belief, Barrick embezzled and/or converted any A/R collected by Avanti and/or its collection agency following the execution of the Loan Documents.

40. Avanti also failed to enter into the Partnership and Investment Agreement set forth in the Term Sheet, triggering the liability for the binding $150,000 Break-Up Fee.

41. In order to induce BCL to enter into the Loan Documents, in addition to the Financial Reports, Barrick also provided BCL with a personal financial statement (the "PFS"), setting forth his personal income, expenses, assets and liabilities. (A copy of the PFS is attached as Exhibit G.)

42. The PFS stated that Barrick's assets totaled $1,060,000.

43. The PFS listed "Real Estate Owned – Personal Residence(s)" as one of Barrick's assets, with a value provided of $990,000 and a mortgage listed at $760,000 (showing Barrick had equity cushion of $230,000 in the residence). This asset was listed as belonging solely to Barrick (i.e. not listed as jointly owned by any other party).

44. The PFS further listed Barrick's total liabilities at $794,000, which was comprised of $760,000 for a mortgage and $34,000 as "Notes Payable – Banks."

45. The PFS further represented that Barrick's net worth was $266,000.

46. BCL reasonably and justifiably relied on the representations and PFS provided by Barrick regarding Barrick's assets and net worth in deciding to proceed with entering into the Loan Documents with and making the Loan to Avanti and Barrick.

47. On January 16, 2012 only about six months after entering into the Loan Documents with BCL, Barrick filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code [Dkt. 1].

48. The Debtor's Schedules list Barrick's personal residence [Dkt. # 25.]

49. However, contrary to the information provided to BCL in the PFS, Barrick's Schedules state that the residence is owned as tenants by the entirety with his non-filing spouse.

50. Also contrary to the information contained in the PFS, Barrick's Schedules state that the value of the property was $678,000, rather than $990,000.

51. At the time that Barrick provided the PFS to BCL, in order to induce BCL to make the Loan to Avanti, Barrick knew or should have known that he was underwater on his residence.

52. The Schedules list Barrick's total assets at approximately $400,000 (not the $1,060,000 set forth on his PFS).

53. The Schedules list Barrick's liabilities at approximately $6,000,000 (not the $794,000 set forth on his PFS).

54. At the time that Barrick provided the PFS to BCL, Barrick knew or should have known that his net worth was not $266,000.

55. Barrick intended to deceive BCL with the misrepresentations regarding his assets and liabilities contained on the PFS that he provided to BCL.

56. Under the terms of the Guarantees, all sums due and owing to BCL by Avanti were and continue to be liabilities of the Debtor.

## COUNT I- OBJECTION TO DISCHARGEABILITY
## (11 U.S.C. § 523 (A)(2)(B))

57. Plaintiff re-alleges paragraphs 1-56 of this Adversary Complaint as though fully set forth herein.

58. Section 523(a)(2)(B) of the Bankruptcy Code provides that a debtor shall not be discharged from any debt "for money, property, or . . . refinancing of credit, to the extent obtained by . . . use of a statement in writing (i) that is materially false; (ii) respecting . . . an insider's financial condition; (iii) on which the creditor to whom the debtor is liable . . . reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive." 11 U.S.C. § 523(a)(2)(B).

59. In order to induce BCL to enter into the Loan Documents and make the Loan, Barrick represented and provided Financial Reports to BCL asserting that Avanti had approximately $305,000 in A/R, of which Barrick represented approximately $168,000 would be collectable.

60. At the time that Barrick provided the Financial Reports reflecting Avanti's A/R figures to BCL, Barrick knew that the vast majority of the A/R set forth in the Financial Reports

was uncollectable, as the majority of Avanti's nurse practitioners did not possess the requisite Provider Certifications.

61. The Financial Reports prepared and provided to BCL by Barrick to secure the Loan contain misrepresentations as to the financial condition of Avanti.

62. Barrick intended to deceive BCL regarding Avanti's true financial condition and the collectability of Avanti's A/R.

63. BCL reasonably and justifiably relied upon the Financial Reports submitted by Barrick.

64. BCL would not have entered into the Loan Documents and made the Loan if Barrick had submitted factually accurate documents with respect to Avanti's financial condition.

65. BCL has suffered damages as a result of the misrepresentations contained in the Financial Reports regarding Avanti's financial condition.

WHEREFORE, Plaintiff BCL - Capital Funding LLC, respectively requests that this Court enter a judgment against Barrick as follows:

A. Denying discharge of Barrick's debt to Plaintiff pursuant to 11 U.S.C. § 523(a)(2)(B); and

B. Granting any other such relief as this Court deems equitable and just.

## COUNT II- OBJECTION TO DISCHARGEABILITY
### (11 U.S.C. § 523 (A)(2)(B))

66. Plaintiff re-alleges paragraphs 1-65 of this Adversary Complaint as though fully set forth herein.

67. Section 523(a)(2)(B) of the Bankruptcy Code provides that a debtor shall not be discharged from any debt "for money, property, or . . . refinancing of credit, to the extent

obtained by . . . use of a statement in writing (i) that is materially false; (ii) respecting . . . an insider's financial condition; (iii) on which the creditor to whom the debtor is liable . . . reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive." 11 U.S.C. § 523(a)(2)(B).

68. In order to induce BCL to enter into the Loan Documents and make the Loan, Barrick represented and provided a PFS to BCL asserting that Barrick had a net worth of $266,000, including a personal residence with a value of $990,000, and liabilities of only $794,000.

69. The PFS submitted by Barrick to secure the Loan contained misrepresentations as to Barrick's financial condition and net worth.

70. Barrick intended to deceive BCL regarding his net worth by providing the PFS containing the misrepresentations.

71. BCL reasonably relied upon the PFS submitted by Barrick, including specifically that one of his assets was a residence worth $990,000 and that his net worth was $266,000.

72. BCL would not have agreed to enter into the Loan Documents and make the Loan if Barrick had submitted factually accurate personal financial statements.

73. BCL has suffered damages as a result of the misrepresentations contained in the PFS regarding Barrick's financial condition.

WHEREFORE, Plaintiff BCL - Capital Funding LLC, respectively requests that this Court enter a judgment against Barrick as follows:

A. Denying discharge of Barrick's debt to Plaintiff pursuant to 11 U.S.C. § 523(a)(2)(B); and

B. Granting any other such relief as this Court deems equitable and just.

## COUNT IV — OBJECTION TO DISCHARGEABILITY
## (11 U.S.C. § 523(A)(4))

74. Plaintiff re-alleges paragraphs 1-73 of this Adversary Complaint as though fully set forth herein.

75. Section 523(a)(4) of the Bankruptcy Code provides that a debtor shall not be discharged from any "embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

76. The Loan Documents gave BCL a secured interest in Avanti's A/R, which was the collateral for the Loan.

77. The Loan Documents required that 75% of all A/R collected on behalf of Avanti be paid to BCL every month.

78. Avanti never paid any collected A/R to BCL.

79. Barrick is a member and majority owner of Avanti, and was the individual running the day-to-day business operations of Avanti.

80. Upon information and belief, Barrick, through embezzlement and/or larceny, converted Avanti's A/R collected after the execution of the Loan Documents for his personal use.

WHEREFORE, Plaintiff BCL - Capital Funding LLC, respectively requests that this Court enter a judgment against Barrick as follows:

A. Denying discharge of Barrick's debt to Plaintiff pursuant to 11 U.S.C. § 523(A)(4); and

B. Granting any other such relief as this Court deems equitable and just.

Dated: May 21, 2012                        Respectfully Submitted,

                                               */s/ Elizabeth B. Vandesteeg*
                                               Elizabeth B. Vandesteeg, ARDC# 6291426
                                               LEVENFELD PEARLSTEIN, LLC
                                               2 N. LaSalle Street, Ste. 1300
                                               Chicago, IL 60602
                                               Tel: 312-346-8380
                                               Fax: 312-346-8434
                                               Email: evandesteeg@lplegal.com